EXCHANGE BANK AND TRUST COMPANY, A CORPORATION, APPELLEE, V. STEVEN D. TAMERIUS ET AL., APPELLANTS.

265 N. W. 2d 847

Filed May 10, 1978. No. 41529.

Thomas A. Wagoner, for appellants.

Joseph F. Chilen of Denney & Chilen, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,

McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is an action to collect the unpaid principal and interest thereon of a promissory note. Plaintiff filed a motion for summary judgment which was sustained. Judgment was entered for plaintiff in the sum of $8,840.60 with interest at the rate of 12.83 percent per annum from May 18, 1976, until paid. Defendants filed a motion for a new trial which was overruled and now appeal. We affirm the judgment of the District Court.

Defendants contend that it was error for the District Court to grant plaintiff's motion for summary judgment. A motion for summary judgment should be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Randall v. Erdman, 194 Neb. 390, 231 N. W. 2d 689 (1975). The District Court properly disposed of this case upon plaintiff's motion for summary judgment. No factual dispute existed. The sole questions were those of law: What were the obligations and liabilities of the parties under the note, and was the note governed by the laws of Texas, or those of Nebraska?

Defendants' next contentions deal with the rate of interest allowed by the District Court. The first one is procedural in nature. In its petition plaintiff alleged that the sum of $8,840.60 together with interest thereon at a rate of 12.83 percent per annum from May 18, 1976, was owed by defendants to plaintiff. A copy of the promissory note was attached to and incorporated into the petition. In their answer defendants alleged that the rate of interest pled by plaintiff was greater than is permitted under the laws of the State of Nebraska and that the loan was usurious and void under the laws of the State of Nebraska. In its reply, plaintiff alleged that the promissory note was governed by the laws of Texas.

Defendants contend that it was error to permit plaintiff to plead the laws of Texas in its reply. Defendants argue that by alleging the laws of Texas were applicable to the loan in its reply, plaintiff injected new matter, inconsistent with its petition and, further, amended its theory of the case.

Section 25-820, R. R. S. 1943, provides: "* * * where the answer contains new matter the plaintiff may reply to such new matter, denying generally or specifically each allegation controverted by him; and he may allege, in ordinary and concise language, and without repetition, any new matter not inconsistent with the petition, constituting a defense to such new matter in the answer." The plaintiff cannot shift positions by means of the reply. Reed Bros. Co. v. First Nat. Bank of Weeping Water, 46 Neb. 168, 64 N. W. 701 (1895). It is not the province of the reply to introduce new causes of action. Wigton & Whitham v. Smith, 46 Neb. 461, 64 N. W. 1080 (1895).

We fail to see any merit in defendants' contention. Defendants in their answer essentially pled the defense of public policy, and that the loan was usurious and void. Plaintiff was certainly entitled to reply to this contention, and it did, alleging that the note was governed by the laws of Texas and that the note was not usurious thereunder. This was not inconsistent with its petition; nor did plaintiff thereby alter or shift its theory of the case. The cause of action, one of contract, remained the same. There is no merit to this contention.

The next issue is whether the District Court was correct in allowing interest at the rate of 12.83 percent per annum upon the note.

In August 1972, the defendant Steven D. Tamerius corresponded with plaintiff, which is located in Dallas, Texas, requesting a loan for $13,500 to finance a business venture. The loan was subsequently consummated. Tamerius experienced financial diffi-

culties and in May 1975, plaintiff corresponded with Tamerius concerning his delinquent payments. Enclosed in this correspondence was a new promissory note which refinanced the unpaid balance of the first note. This note, dated May 22, 1975, was executed by Tamerius at Grand Island, Nebraska, and guaranteed by his parents, the defendants Dean and Bonnie Tamerius, at Fairbury, Nebraska, and returned to plaintiff by mail. The note required that all payments be made at the plaintiff's office at Dallas, Texas. Tamerius made six payments to plaintiff at its Dallas office. In April 1976, plaintiff, because of defaults on payments due, elected to exercise its option to accelerate the maturity of the note and made demand for the remaining principal due and interest.

Section 1-105, U. C. C., provides in part that, "* * * when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such state or nation shall govern their rights and duties."

The promissory note clearly and specifically provided that: "Interest and/or charges are not in excess of those permitted under the *Texas Consumer Credit Code*. The holder of this Note may collect all lawful amounts actually incurred and permitted *under said Code* * * * and the Debtor agrees to pay such amount when assessed." (Emphasis supplied.)

It would seem, from this provision, that the parties clearly intended that the note should be governed by the laws of the State of Texas. In any event, even if our assessment of the parties' intent is erroneous, the note provided for payments at plaintiff's office at Dallas, Texas. The rule is well established that: " 'Where a promissory note is made in one state, to be performed in another state, it is, ordinarily, to be regulated and governed by the law of

the place of performance, without regard to the place at which it was written, dated, or signed, unless it clearly appears that the parties intended that the contract should be governed by the law of the place where made.' "  United Bank & Trust Co. v. McCullough, 115 Neb. 327, 212 N. W. 762 (1927).  See, also, Farm Mortgage & Loan Co. v. Beale, 113 Neb. 293, 202 N. W. 877 (1925); 16 Am. Jur. 2d, Conflict of Laws, § 40, p. 62.

The District Court correctly concluded that the note was governed by the laws of Texas and that under these laws the amount of interest called for on the note is permissible.  See Article 5069-4.01, Vernon's Texas Statutes.  Defendants argue that the rate of interest is usurious under Nebraska law. Usury laws are not so distinctive a part of the public policy of the forum that courts will, on the ground of public policy, decline to enforce any contract which would be invalid, if tested by them, although valid according to its proper law.  Grady v. Denbeck, 198 Neb. 31, 251 N. W. 2d 864 (1977); 11 Am. Jur., Conflict of Laws, § 156, p. 458.

In conclusion, it appears that Nebraska will enforce contracts lawfully made and to be performed outside Nebraska jurisdiction even if such contracts subject a Nebraska citizen to a usurious interest rate.  Grady v. Denbeck, *supra;* Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240 (1954); Coad v. Home Cattle Co., 32 Neb. 761, 49 N. W. 757 (1891); Hewit v. Bank of Indian Territory, on rehearing, 64 Neb. 468, 92 N. W. 741 (1902).  See, also, Seeman v. Philadelphia Warehouse Co., 274 U. S. 403, 47 S. Ct. 626, 71 L. Ed. 1123 (1927).

The judgment of the District Court is correct and is affirmed.

AFFIRMED.